Mr. Justice Morris
delivered the opinion of the Court:
This is an appeal from the decision of the acting Commissioner of Patents in an interference case, wherein the *318 invention in controversy is an improvement in the domain of sewing machines. It is described as follows in the issue formulated in the Patent Office:
“ In a sewing machine the combination of a needle and its actuating mechanism, of a rotating shaft having an elongated eccentric surface thereon, and a reciprocating cylindrical looper-bar carrying the looper and provided with a laterally-projecting fork embracing said elongated eccentric surface, whereby the forked extension will continue in engagement with the eccentric surface throughout the travel of the looper-bar, and the latter will partake of a compound reciprocal and oscillatory movement.”
The invention is in the looper mechanism. The appellant, John E. Eefel, has a patent for it issued to him on December 14, 1897, based upon an application filed by him on January 14, 1897. Upon this date of his application he relies as his time of conception and reduction to practice; and he has taken no testimony in the case. Rudolf Stocker, the other party to the interference, did not file his application until June 4, 1898, upward of five months after the issue of the patent to Fefel, and stimulated thereto by the issue of that patent; but he claims in his preliminary statement to have made the invention in question before March, 1894, and to have reduced it to practice by the construction of an operative full sized machine in the month of March, 1894. At or about the time of making his application he assigned his right to the Union Special Sewing Machine Company, of Chicago, in the State of Illinois, by which or on behalf of which the interference has been prosecuted. For the purpose of procuring the interference, the one claim of Fefel, which is in the words of the issue as herein-before stated, was copied in the application filed in the name of Stocker. Testimony was taken only on behalf of Stocker and his assignee. Fefel took no testimony.
The examiner of interferences and the board of examiners in chief awarded judgment of priority of invention to *319 Fefel. This decision was reversed by the acting Commissioner, who awarded judgment of priority to Stocker. From his decision the cause has been brought here by appeal.
We concur in the decision of the examiner of interferences and of the board of examiners; and we think there was error in the decision of the acting Commissioner, for which his judgment should be reversed.
Stocker, the appellee in the case, is not only a junior applicant, but he has also to overcome a patent issued to the appellant. The burden of proof, therefore, is upon him, to prove his case beyond a reasonable doubt. We do not think that he has so proved his case; and we are of opinion that, if the case were one to be determined by the mere preponderance of evidence, there would be grave reason to doubt whether the appellee had exhibited a satisfactory case.
The testimony, which, as we have stated, is only that taken on behalf of the appellee, has been fully and fairly analyzed in the several decisions of the tribunals of the Patent Office, and it is unnecessary to add another analysis thereto. It will be sufficient to say that the appellee’s case depends exclusively on the identity and operative character of a machine which he claims to have made in March of 1894; and the history of this machine justifies its being regarded with very great suspicion.
It seems that, as originally made up, it was constructed in Chicago in the shops of the Union Special Sewing Machine Company, and was what was known as a “Union Special Bag Machine.” It was shipped from Chicago to the New York office of that company on August 17, 1892. Subsequently it came into the hands of Stocker; but how, or when, or where, under what circumstances, or for what purpose, the record wholly fails to disclose. Next, in the spring of 1894, it is found in the machine shop of Weiss Brothers, in Brooklyn, New York. It had been delivered to them by one Louis Schultz, who is styled in the record as an experimental machinist, and who then occupied a part *320 of the same floor with the Weiss Brothers. Schultz is said to have received it from Stocker, who was a machinist or mechanic in his employment; or it may be, that Schultz purchased it from the Union Special Sewing Machine Company, for there is a memorandum indicating such a sale on the books of the company under date of July 18, 1893. The machine was placed with Weiss Brothers by Schultz for the purpose, as testified, of having a looper or hook movement added to it or inserted to it; and this addition was made under the direction of the appellee Stocker. The machine, with the improvement added, is said to have then been operated, but how successfully does not appear, and thereupon to have been returned to Schultz, some time in the summer of 1894, or not until after February of 1895; for the testimony is not clear on the point. And it may here be remarked that neither Schultz, for apparently very good reasons, nor Stocker, for whose absence as a witness no reason is given, testified in the case.
There seems to have been an arrangement or agreement between the Sewing Machine Company and Schultz, whereby the former was entitled to purchase any of the latter’s inventions which suited the company; and this machine, with other machines in his shop or in the shop of Weiss Brothers, was examined by officers of the company in February of 1895. It then came into the possession of one Julius Bissegger in Brooklyn; but who Julius Bissegger was, or why he had the machine, does not appear. The next we hear of it is, that on December 17, 1895, an employee of the company having procured it from Bissegger, it was sent from the New York office of the company to the company’s attorney in Washington, for what purpose does not satisfactorily appear; for no use was there made of it, and it was returned by the attorney to the New York office in October, 1897, nearly two years afterward, with a number of other machines belonging to the company. From the New York office it was sent in November, 1897, to the Chicago office, *321 or to the machine shops of the company in Chicago, for repairs to be made upon it, and such repairs were made. Then it came back to the attorney from Chicago a little before the time of the application for patent in June, 1898. Such is a brief outline of the peculiar history of this much traveled and much transferred machine; and the statement certainly makes it imperative on the applicant for a patent for it to establish its identity and its original operativeness to a very great degree of certainty. We do not think that this has been done. It is conceded that the machine, as it now exists, was satisfactorily operated before the examiner of interferences in the Patent Office ; but it is not sufficiently shown that it was satisfactorily operated by Stocker, when it came to him from the hands of Weiss Brothers. Moreover, its apparent abandonment by Stocker, and the long and wholly unexplained delay of more than four years in the application for a patent, are strongly indicative of the fact that the original machine of Stocker was not a successful reduction to practice, and was no more than an abandoned experiment. Long and unexplained delay in the application for a patent is always significant in such cases, especially when, as here, the parties in interest were actively engaged in the prosecution of other similar applications; and such delay raises a presumption which it is incumbent on the applicant to rebut by clear and satisfactory proof.
Complaint is made on behalf of the appellee that “ there has been a tendency in the recent decisions of the Commissioner of Patents and of the Court of Appeals of the District of Columbia, where a party who first reduces to practice has failed to file an application for patent and has wilfully hidden the invention from the public for a great term of years, and failed to file his application until some other person has come into the field and established a market for the goods, to hold that the party first to reduce to practice has lost his rights, and the Commissioner and the said court have recently in such cases adopted the rule of *322 deciding priority in favor of the party first getting into the office with an application for patent.”
And the cases of Mason v. Hepburn, 13 App. D. C. 86, and Warner v. Smith, 13 App. D. C. Ill, are cited as illustrative of the tendency. But the tendency is a wholesome one, and it is not desirable that it should be relaxed. We have held, and it is no more than just, that inventors striving honestly, in good faith, and with due diligence, to perfect their inventions, instead of engaging in a race of diligence to reach the Patent Office with crude and probably inoperative devices, should be commended for their delay rather than be charged with laches. Yates v. Huson, 8 App. D. C. 93. But it harms no meritorious inventor, and it is greatly to the interest of the public, that long delay, unexplained, between the time of the alleged invention and the application for patent, when other inventors have entered the same field and other rights have accrued, should be held to bar stale claims of priority. A stale claim should be fortified by the very strongest and most satisfactory proof before it can he allowed to overthrow the vested right of a patent already issued. There is sometimes a tendency to hold back applications for patents in order to circumvent rival claimants, and to prolong the life of the monopolies previously-granted; but it is a tendency which should be rebuked whenever it is possible to do so.
We are of opinion that to the present case is fully applicable the rule laid down in Jhe case of Mason v. Hepburn, and followed in the case of Warner v. Smith, and that upon the authority of those cases the decision of the acting Commissioner of Patents in this case should he reversed, and the decision of the board of examiners in chief be reinstated.
Judgment of priority of invention is awarded to the appellant Fefel.
The clerk of the court will certify this opinion and the proceedings in the Cause to the Commissioner of Patents according to law.